IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:14-cv-24137-JLK

**TELESTRATA, LLC**, a Colorado limited liability
company, individually and derivatively on behalf
of the shareholders of NetTALK.com, Inc., a Florida
corporation,

    Plaintiff,

v.

**NETTALK.COM, INC.**, a Florida corporation,
**ANASTASIOS "TAKIS" KYRIAKIDES,
STEVEN HEALY, ANASTASIOS "NICK"
KYRIAKIDES II, KENNETH HOSFELD,
GARRY PAXINOS, KYRIAKIDES
INVESTMENTS, LTD.**, a Florida limited liability
partnership, **SHADRON STASTNEY,** and
**ANGELA ILISIE,**

    Defendants.

_____

<u>**REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS PURSUANT TO F.R.C.P. 23.1**</u>

<u>Of Counsel</u>
Matthew P. Canini
Fla. Bar No. 0098306

Defendants by and through their counsel, Sichenzia Ross Friedman Ference LLP, respectfully submit this reply memorandum to Plaintiff Telestrata, LLC's ("Telestrata" or "Plaintiff") Response in Opposition to Defendants' Motion to Dismiss (ECF No.15, hereinafter the "Opp.").

## PRELIMINARY STATEMENT

The Opposition is replete with misstatements of law regarding nearly every issue raised by Defendants' Motion to Dismiss the Verified Complaint Pursuant to Rule 23.1 (ECF No. 13, hereinafter the "MTD").  Contrary to the contentions in the Opposition, Florida law's requirement that a derivative plaintiff make a demand on the board of directors and wait at least 90 days before filing a suit is ***absolute***, i.e., there is no futility exception.  Plaintiff has failed to plead such a demand and so for this reason alone the Verified Complaint must be dismissed.

Notwithstanding, contrary to Plaintiff's contention, Plaintiff cannot adequately and fairly represent NetTalk's shareholders.  When determining if a derivative plaintiff "fairly and adequately" represents corporate shareholders under Rule 23.1, Eleventh Circuit precedent is clear that the District Court can consider all the facts and circumstances surrounding each case, including affidavits attesting to facts outside the pleadings.  As such, the Affidavit of Anastasios "Takis" Kyriakides (ECF No. 13-1, hereinafter the "Takis Aff.") is properly before this Court, its contents are uncontested by Plaintiff, and it shows that Telestrata has not (and will not) fairly and adequately represent the interests of NetTalk's shareholders.

Finally, Plaintiff's attempt to claim equitable ownership of NetTalk's shares to establish standing for its Third Claim for Relief, which is based on alleged employment contracts executed before Plaintiff was issued any NetTalk shares, is nothing more than gamesmanship.  Plaintiff asks this Court to hold that Telestrata had equitable ownership of NetTalk's shares at the

moment they began negotiating the issuance of those shares to Telestrata, ***but prior to any transfer of property*** and even before the parties had any writing between the two of them discussing the transfer of shares.  Plaintiff puts forth no germane case in support of this wildly overbroad conception of equitable ownership.  Plaintiff, furthermore, has pled no other facts sufficient for the Court to confer it equitable ownership when the employment agreements were executed.  Accordingly, the Third Claim for Relief must be dismissed.

## ARGUMENT[1]

### I.     Plaintiff has Not Made the Requisite Demand on the Board

Plaintiff admits that it made no demand on NetTalk's board prior to filing the Verified Complaint (ECF No. 1, hereinafter the "Verified Complaint" or "Compl."), but claims that such a demand would have been futile.  (See Opp. at pp. 4-8.)  Plaintiff contends that it has been Florida law since 1932 that a demand on the directors or shareholders need not be made if it would be "impractical, unreasonable or useless."  (See id. at p. 4.)  Plaintiff is mistaken.

Florida law was amended in 1990 to do away with Plaintiff's claimed exception to the demand requirement.[2]  In 1991, the United States Supreme Court recognized that Florida's demand requirement is absolute, i.e., the 1990 amendment did away with the futility exception. See Kamen v. Kemper Fin. Servs., 500 U.S. 90, 102 n.7, 11 S.Ct. 1711 (1991) (citing Florida law, specifically FLA. STAT. ANN. § 607.07401(2) (Supp. 1991), as an example of an absolute

---

[1] Capitalized terms herein without definition take the meaning set forth in Defendants' MTD.

[2] Section 607.07401 was amended in 1990 with the requirement that a plaintiff "allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored."  Garcia v. Deyesso, SUCV2012-03509-BLSI, 2012 Mass. Super. LEXIS 348, at *5 n. 4 (Suffolk Super Ct. Dec. 4, 2012).  After 1990, Section 607.07401 of the Florida business corporation act reads as follows: "[a] complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored . . . ."  Fla. Stat. 607.07401 (LEXIS Fla. Code Archive 2002).

demand requirement).   The cases cited in support of the futility exception in the Opposition were decided prior to the 1990 amendments to Florida law.  (See Opp. p. 4-5.)[3]

Notwithstanding, additional amendments to the Florida Business Corporation Act in 2003 make it clear that Florida's demand requirement is absolute and without exception.  Specifically, Section 607.07401 was amended from the 1990 version to read:

> A complaint in a proceeding brought in the right of a corporation must be verified and allege with particularity the demand made to obtain action by the board of directors and that the demand was refused or ignored *by the board of directors for a period of at least 90 days from the first demand unless, prior to the expiration of the 90 days, the person was notified in writing that the corporation rejected the demand, or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.*

See 2003 Fla. HB 1623, 2003 Fla. ALS 283, 2003 Fla. Laws ch. 283, codified at Fla. Stat. 607.07401 (emphasis added to amended language).  Florida's legislative history provides that this 2003 amendment was enacted so that "the board of directors *must* be provided with at least 90 days to take action on a demand before a shareholder is permitted to file a derivative action."[4] Furthermore, many of the 2003 amendments to Section 607 et seq. of the Florida statutes were

---

[3] Plaintiff cites only one case published after 1990 in support of its proposition that Florida recognizes an exception to the requirements that a derivative plaintiff make a demand on the board of directors before filing a suit.  (See Opp. at p. 5) (citing In re Mercedes Homes, Inc., 431 B.R. 869, 877 (Bankr. S.D. Fla. 2009)).  Mercedes Homes, however, relies exclusively on case law published prior to the 1990 amendment.  431 B.R. at 877 (citing only Belcher v. Schilling, 309 So. 2d 32, 35 (Fla. 3d. Dist. Ct. App. 1975).  Moreover, the court's reference to the futility exception was made in *dicta* without any citation to the relevant statute.  See Garcia, 2012 Mass. Super. LEXIS 348, at *10.  Based on the foregoing, the Mercedes Homes Court's reference to a single outdated Florida case is an anomaly and does not revive Florida's pre-1990 exception to the demand requirement.

[4] FLORIDA SENATE STAFF ANALYSIS AND ECONOMIC IMPACT STATEMENT, Commerce, Economic Opportunities , and Consumer Servs. Comm. and Senator Klein, CS/SB 2362 at p. 5 (April 9, 2003) (emphasis added), available at http://www.leg.state.fl.us/data/session/2003/Senate/bills/analysis/pdf/2003s2362.cm.pdf.

based on the provisions of the 2002 Model Business Corporation Act ("MBCA") (see supra n. 4 at p. 2), including the change to Section 607.07401, which is similar to Section 7.42 of the MBCA.[5]  The official comment to MBCA Section 7.42 is informative of the Florida legislators' intent with respect to Section 607.07401, and provides in pertinent part, as follows:

> Section 7.42 ***requires a written demand on the corporation in all cases***. The demand must be made at least 90 days before commencement of suit unless irreparable injury to the corporation would result. This approach has been adopted for two reasons. ***First, even though no director may be independent, the demand will give the board of directors the opportunity to reexamine the act complained of in the light of a potential lawsuit and take corrective action*** …

MBCA § 7.42 (Official Comment) (emphasis added).[6]  Based on the foregoing, the requirement that a derivative Plaintiff first make a demand on the board is absolute under Florida law.

Moreover, while we are unaware of Florida appellate precedent specifically interpreting the post-1990 amendments to Section 607.07401, numerous other courts interpreting the statute have recognized that it imposes an ***absolute*** demand requirement (without a futility exception).[7] See Garcia, 2012 Mass. Super. LEXIS 348, at 10 (holding "Florida is a universal demand jurisdiction i.e. that there is no futility exception" and dismissing the action); Kamen, 500 U.S. at

---

[5] Section 7.42 of the Model Business Corporation Act states in pertinent part:

> No shareholder may commence a derivative proceeding until: . . . (2) 90 days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation or unless irreparable injury to the corporation would result by waiting for the expiration of the 90-day period.

MODEL BUS. CORP. ACT, American Bar Found. § 7.42. (3rd ed. 2002).

[6] The official comment to Section 7.42 of the Model Business Corporation Act is available at, http://users.wfu.edu/palmitar/ICBCorporations-Companion/Conexus/ModelBusinessCorporationAct.pdf at pg. 84.

108-109 n.7 (Florida's demand requirement is absolute); Noah Techs., Inc. v. Rice, 2:14-cv-325-Ftm-29DNF, 2014 U.S. Dist. LEXIS 161548, at *9 (MD. Fla. Nov. 18, 2014) (same); Boland v. Engle, 113 F.3d 706, 712 (7th Cir. 1997) ("Eleven states have statutorily imposed a universal demand requirement," citing Florida statute and ten others); In re Ferro Corp. Deriv. Litig., 2006 U.S. Dist. LEXIS 11608, 2006 WL 2038659, at *8 (N.D. Ohio March 21, 2006), aff'd, 511 F.3d 611 (6th Cir. 2008) ("Florida has . . . adopted a universal demand requirement, which abolished the demand futility exception altogether"); Ritter v. Dollens, 841 N.E.2d 571, 2004 WL 1771597 at *1 & n.3 (S.D. Ind. July 13, 2004) (Florida one of nineteen states with universal demand statutes); In re Guidant Shareholders Deriv.Litig., 841 N.E.2d 571, 574 (Ind. 2006) (listing Florida as a participant in "the national trend towards the universal demand rule");Werbowsky v. Collomb, 766 A.2d 123, 141, 362 Md. 581 (Md. 2001) (one of eighteen states); Marx v. Akers, 88 N.Y.2d 189, 197, 644 N.Y.S.2d 121 (1996).

In the Opposition, Plaintiff points to two communications with NetTalk on October 16, 2014 and October 29, 2014, but neither of which are specifically alleged to be a demand on NetTalk's board in the Verified Complaint.  (See Compl. ¶¶ 66-67, 81-85, 89; Opp. pp. 5-6). Nevertheless, Plaintiff filed the Complaint on November 12, 2014.   Thus, even if the Court were to find that these two communications were demands on NetTalk's board, ***which they are not*** (see MTD. pp. 8), and those demands were pled with the particularity required by Rule 23.1 and Fla. Stat. 607.07401(2),[8] ***which they were not*** (see MTD. pp. 7-8), Plaintiff did not wait the required 90 days before filing this action.

---

[8] See Stepak ex rel. Southern Co. v. Addison, 20 F.3d 398, 401 (11th Cir. 1994) (stating Fed R. Civ. P. 23.1 creates a pleading requirement more stringent that Rule 8 or 12(b)(6)).

Accordingly, Defendants respectfully request the Court dismiss the Verified Complaint because Plaintiff failed to make a demand on NetTalk's Board of Directors prior to filing this derivative action, in accordance with well-established Florida law.

## II.     Plaintiff Cannot Fairly and Adequately Represent NetTalk's Shareholders

### a. *Standard Under Rule 23.1*

Plaintiff again misstates the law when it argues that Defendants cannot put forth the Takis Aff. on this Rule 23.1 motion to show that Telestrata's interests are inimical to the NetTalk's shareholders.  (See Opp. at pp. 3-4).  Plaintiff cites one case in support of this assertion, Chrystall v. Serden Techs. Inc., 913 F. Supp. 2d 1341 (S.D. Fla. 2012).  (See Opp. at p. 3.)  Plaintiff contends that Chrystall stands for the proposition that a Rule 23.1 motion should be treated under the same standard as a motion to dismiss under Rule 12(b)(6).  (See id.)  To the contrary, Chrystall holds that a derivative plaintiff must plead its demand on the board of directors with particularity to overcome a Rule 23.1 motion – not that a Rule 23.1 motion and 12(b)(6) share the same standard.  Id. at 1350 (the plaintiff must allege "any effort by the plaintiff to obtain the desired action from the directors").  Indeed, Plaintiff has misread this case.

Moreover, the Opposition's misleading interpretation of Chrystall to support the claim that the Court may not consider evidence outside the pleadings on a Rule 23.1 motion is simply false.  (See Opp. at p. 3.)  While Part (b) of Rule 23.1 imposes the "Pleading Requirements," set forth in Chrystall, the Court can, and should, consider evidence outside the pleadings when determining if a derivative plaintiff "fairly and adequately" represents the interests of shareholders pursuant to Part (a) of Rule 23.1 titled "Prerequisites."  See FED. R. CIV. P. § 23.1.

In this respect, 11th Circuit precedent is clear that the determination of whether a Plaintiff fairly and adequately represents the shareholders turns on the ***"total facts and circumstances of***

*each case*." Rothberg v. Security Management Co., 667 F.2d 958, 961 (11th Cir. 1982) (emphasis added).  To reach the totality of the facts and circumstances of a case the parties may submit evidence (including affidavits) regarding matters outside the pleadings.  See Honreich v. Plant Indus., Inc., 535 F.2d 550, 552 (9th Cir. 1976) ("In determining the adequacy of appellant as a representative of other shareholders, the court was entitled to rely not only upon the pleadings, but also the affidavits submitted by the parties relating information of direct consequence to the issue before the court."); see also Rothberg, 667 F.2d at 959, 962 n. 9-11 (upholding the dismissal by the District Court under Rule 23.1 and referencing deposition testimony considered by the district court); Owen v. Modern Diversified Indus., Inc., 643 F.2d 441, 442-44 (6th Cir. 1981) (upholding District Court's decision to dismiss the complaint and referencing extrinsic evidence of the plaintiff's inimical interests to the corporation evidenced by deposition testimony).

Accordingly, the Takis Aff., which outlines Telestrata's inimical behavior towards NetTalk, is properly before this Court.[9]

### b. *Plaintiff Cannot Fairly and Adequately Represent NetTalk's Shareholders*

The Opposition contends that asserting direct and derivative claims in the same action does not warrant "automatic" dismissal.  (See Opp. at p. 8.)  Plaintiff further claims that under the Rothberg factors it can adequately represent NetTalk's shareholders. (See id. at 9-10.)

---

[9] Additionally, the Court should not grant Plaintiff's request to file a competing affidavit to the Takis Aff.  (See Opp. at p. 3, n.1.)  Plaintiff, in its Opposition cited authoritative precedent from this Circuit holding that the Court can considered ***all facts*** and circumstances surrounding a case to determine if a plaintiff is a proper derivative plaintiff under Rule 23.1 (see, e.g., Rothberg, supra).  (See Opp. at p. 8.)  Considering this, Plaintiff's decision to argue an alternative standard for Rule 23.1 was strategic. The Court should not allow Plaintiff two bites of the apple to oppose the MTD and Defendants will move to strike any rogue sur-reply.

Finally, Plaintiff claims that a majority vote of those shareholders to remove the Telestrata Directors does not implicate Plaintiff's fitness to be a derivative plaintiff.  (See id. at p. 11-12.)

The MTD does not argue that Plaintiff's complaint should *automatically* be dismissed because it asserts both derivative and direct claims.  (See MTD at pp. 9-11.)  Initially, the MTD demonstrates that Plaintiff has interests antagonistic and in conflict with NetTalk's shareholders, such that Plaintiff cannot "assume strict fiduciary responsibilities" as a derivative plaintiff.  See Noah Techs, Inc., 2014 U.S. Dist. LEXIS 161548, at *10-11.  As discussed in the MTD, Plaintiff has already shown its inimical intentions through a course of action calculated to harm NetTalk – facts which Plaintiff does not contest.  (See generally Takis Aff.)

Regarding the Opposition's claim that the Rothberg factors show its ability to represent NetTalk's shareholders, these factors are non-exclusive.  See Rothberg, 667 F.2d at 961 ("Rule 23.1 turns upon the total facts and circumstances of each case").  Courts consider a plaintiff's use of derivative claims as leverage against a company's board as a factor dispositive of dismissal.  See Rothberg, 667 F.2d at 960-61& n. 7 ("a derivative suit can constitute a particularly effective weapon for purposes of obtaining a favorable settlement").[10]  In this vein, the Opposition concedes that "[t]he direct claims seek equitable judicial intervention to enforce Telestrata's rights and the derivative claims seek to hold the Individual Defendants liable for having violated those rights . . . ." (Opp. at p. 12.)  The point of a derivative suit is not to punish individual directors for a claimed breach of contract with a shareholder who has other business relationships

---

[10] Plaintiff claims that unlike other cases cited in the MTD, Plaintiff did not file separate actions, and so, cases cited in support of the fact that Telestrata is trying to leverage NetTalk through the use of its derivative claims should be distinguished.  (See Opp. at p. 11.)  Plaintiff, however, can improperly leverage NetTalk's Board using one action just as effectively as with two actions. Moreover, distinguishing these cases based solely on the number of actions filed would allow future plaintiffs to game the system by filing all their derivative and direct claims together. Accordingly, Plaintiff has put forth no logical basis for the Court to distinguish this line of cases.

with the company he partially owns.  Given that Plaintiff has already exhibited a course of conduct in pursuit of its own interests to NetTalk's detriment (see Takis Aff.), the Court should take this statement as confirmation of Telestrata's intent to use its derivative claims as leverage for its direct claims.  And, the fact that Plaintiff has put forth these derivative claims for an admittedly improper and self-serving purpose is further evidence it is unfit to represent NetTalk's shareholders as a fiduciary.

Finally, the vote to remove the Telestrata Directors indicates that Plaintiff has no support from NetTalk's other shareholders in this action, and so, Telestrata cannot adequately represent them.  See Rothberg, 667 F.2d 958 at 961(stating that court will consider the degree of support received from other shareholders in determining if the derivative plaintiff is fit to represent them).[11]  Moreover, since this vote was a consequence of Plaintiff's conduct as alleged in the Verified Complaint, it is a good representation of if Telestrata is an appropriate derivative Plaintiff.  (See Takis Aff. ¶¶ 3-5.)   Indeed, this factor strongly warrants dismissal.

Accordingly, the totality of the uncontested facts and circumstances surrounding this case show that Telestrata cannot adequately represent NetTalk's shareholders in a derivative action and the Court should dismiss the Verified Complaint.

---

[11] Telestrata also claims that a determination on whether "a 'majority' of shareholders disagree[ing] with Telestrata is wholly premature, given that one of Telestrata's direct claims here is for a judicial declaration as to the balance of ownership interest in the first place." (Opp. at p. 11.)  On October 16, 2014 a majority of NetTalk's shareholders voted to remove the Telestrata Directors.  (See Takis Aff. ¶ 5.)  Pursuant to the Securities Laws of the United States such corporate action did not become effective until November 26, 2014.  (See id. ¶ 6.)  If Telestrata believed this corporate action was improper it could have moved for injunctive relief prior to the effective date.  It has not.  Telestrata asks this Court to essentially hold void a valid vote of NetTalk's shareholders because it filed a complaint alleging it was owed more shares at the time of the vote.  Such a result would make corporate governance virtually impossible.

**III.     Telestrata Has No Standing to Bring its Third Claim for Relief**

Plaintiff admits that it did not own shares at the time the employment contracts, which are the subject of the Third Claim for Relief, were executed. (See Compl. ¶¶ 108-116; Opp. at p. 12.) Plaintiff, however, argues that it had equitable ownership of NetTalk's shares during its negotiation with NetTalk for those shares, but prior to the actual transfer of the shares.  (See Opp. at p. 14.)  Plaintiff's cited case law in support of this wildly broad conception of equitable ownership is not on point and speaks to equitable ownership that arises when parties are in a legally recognized relationship – not simply in negotiations.  See Provence v. Palm Beach Taverns, 676 So. 2d 1022, 1024-25 (Fla. 4th Dist. App. Ct. 1996); South End Improv. Group., Inc. v. Mulliken, 602 So.2d 1327, 1330-31 (Fla. 4th Dist. App. Ct. 1992).

In this vein, Plaintiff has pled it didn't even execute a term sheet with NetTalk until February 21, 2014 *- nineteen (19) days after the last employment contract was executed on February 2, 2014.*[12]  (See Compl. ¶ 39.)  Moreover, Plaintiff does not plead that it had the fiduciary or trust-type relationship discussed in its cited cases.  As such, Plaintiff had no legally recognized relationship with NetTalk when these employment contracts were executed sufficient to confer it equitable ownership.  Moreover, the "discussion" about these shares is pled in a conclusory fashion with no reference to a date, time frame, and without identifying the specific entity that was allegedly negotiation with NetTalk.  (See id. at ¶ 36.)  Accordingly, the Court has no basis for finding that Plaintiff has pled equitable ownership and the Third Claim for Relief must be dismissed.

---

[12] By Plaintiff's own admission, it reviewed these agreements prior to closing its transaction for the issuance of NetTalk's shares.  (See Compl. ¶ 36.)  It is detrimental to Plaintiff's Third Claim for Relief that it executed the purchase agreement knowing about the employment contracts i.e. Plaintiff clearly didn't think these contracts breached a duty at the time it was issued shares. (See id. ¶ 25.)  Considering the foregoing, and the fact that plaintiff only now complains about these agreements, this claim is yet another example of Plaintiff's attempt to leverage NetTalk's board.

## CONCLUSION

For all the foregoing reasons, the Court should grant Defendants' Motion to Dismiss in its entirety and dismiss the Complaint with prejudice.

Dated: New York, New York
February 12, 2015

Respectfully submitted,

SICHENZIA ROSS FRIEDMAN FERENCE LLP

By: /s/ Matthew P. Canini
Matthew P. Canini, Esq.
(Fla. Bar No. 0098306)
61 Broadway, 32nd Floor
New York, New York 10006
(212) 930-9700

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on February 12, 2015, that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on:

R. Livingston Keithley
Kelly & Walker LLC
1401 17th Street, Suite 925
Denver, CO 80202
lkeithley@kellywalkerlaw.com

Matthew Cragg Martin
Gaebe Mullen Antonelli Esco & Dimatteo
420 S. Dixie Highway, 3rd Floor
Coral Gables, FL 33146
mmartin@gaebemullen.com

                                                By:   /s/ Matthew P. Canini
                                                              Matthew P. Canini