**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

Civil Action No. 1:14-CV-24137-JLK

TELESTRATA, LLC, a Colorado limited liability company, individually and derivatively on behalf of the shareholders of NetTALK.com, Inc., a Florida corporation,

        Plaintiff,

v.

NETTALK.COM, INC., a Florida corporation,
ANASTASIOS "TAKIS" KYRIAKIDES,
STEVEN HEALY,
ANASTASIOS "NICK" KYRIAKIDES II,
KENNETH HOSFELD,
GARRY PAXINOS,
KYRIAKIDES INVESTMENTS, LTD., a Florida limited partnership,
SHADRON STASTNEY, and
ANGELA ILISIE,

        Defendants.

---

## FIRST AMENDED COMPLAINT

---

Plaintiff TELESTRATA, LLC, a Colorado limited liability company ("Telestrata"), by and through its undersigned counsel, asserts its first amended complaint against Defendants, as follows:

### <u>INTRODUCTION</u>

1.    Telestrata brings this derivative shareholder action and direct action against NetTALK.com, Inc. ("NetTALK" or the "Company") and other individuals who have taken unlawful control of the Company and its assets, to the detriment of the Company's shareholders and authorized Directors. Under the terms of various investment

agreements, Telestrata should have majority control of the Company, as well as three seats on the Board of Directors of the Company (the "Board").  However, the Defendants have conspired amongst themselves to cause the Company to enter into multiple agreements without notice or approval of the Board, and have taken fraudulent and unlawful steps seeking to isolate and prevent proper corporate action by Telestrata.

2.  The defendant group of individuals, led by Anastasios "Takis" Kyriakides, have engaged in a concerted campaign to sell unauthorized shares of stock in the Company and unauthorized debt securities of the Company, refuse to report to the Board or the President of the Company, continue to incur debt without the prior knowledge or approval of the Board, and are acting to devalue and dilute the ownership interest of Telestrata and other shareholders for their own personal benefits.  Their actions have caused a deadlock in the Board of Directors (and a dispute concerning who even sits on the Board of Directors), as well as deadlock and lack of transparency concerning the identity of the shareholders of the Company.

3.  For the protection of the Company, its shareholders and creditors, and its assets, Telestrata seeks immediate appointment of a Custodian *pendente lite* for NetTALK, and injunctive relief preventing Takis Kyriakides and Steven Healy from further taking any action on behalf of the Company.  Telestrata also asserts various claims for breach of contract, breach of fiduciary duty, fraud in the inducement, conspiracy, and seeks a judicial determination as to the current number of valid shares and ownership of the Company.

## PARTIES

4.  Plaintiff Telestrata is a Colorado limited liability company with its principal place of

business in Boulder, Colorado.  Telestrata's two members are Samer Bishay and Nadir AlJazwari, both of whom are residents and citizens of Ontario, Canada.

5.  Defendant NetTALK is a publicly traded Florida corporation whose principal place of business is in Miami, Florida.

6.  Defendant Takis Kyriakides is an individual believed to be a Florida citizen, residing in Hollywood, Florida.  At all relevant times through October 16, 2014, Takis Kyriakides held the title of CEO and Chairman of the Board of the Company.

7.  Defendant Steven Healy is an individual believed to be a Florida citizen, residing in Dania Beach, Florida.  From January 2014 through October 16, 2014, Mr. Healy held the title of Chief Financial Officer of the Company.

8.  Defendant Anastasios "Nick" Kyriakides II is an individual believed to be a Florida citizen, residing in Tallahassee, Florida.   Since approximately January 2014, Nick Kyriakides has held the title of Chief Operating Officer of the Company.

9.  Defendant Kenneth Hosfeld is an individual believed to be a Florida citizen, residing in Coral Springs, Florida.  At all relevant times, Mr. Hosfeld has held the title of Executive Vice President of the Company.

10.  Defendant Garry Paxinos is an individual believed to be a Florida citizen, residing in Pompano Beach, Florida.  At all relevant times, Mr. Paxinos has held the title of Chief Technology Officer of the Company.

11.  Defendant Kyriakides Investments, Ltd. is a Florida limited partnership with its principal place of business in Hollywood, Florida.  Upon information and belief, the sole general partner of Kyriakides Investments is Takis Kyriakides, a Florida citizen.

12.  Defendant Shadron Stastney is an individual believed to be a New Jersey citizen, living

in New Jersey.  At all relevant times, Mr. Stastney has been a shareholder of the Company, and upon information and belief has been providing legal advice and counsel to certain other Defendants, including but not limited to Takis Kyriakides, in the State of Florida.  Upon further information and belief, Mr. Stastney has had repeated phone calls and visits with the other Defendants concerning the management and operation of the Company, and has otherwise engaged in the acts in the State of Florida as further alleged herein.

13.     Defendant Angela Ilisie is an individual believed to be a Florida citizen, residing in Tamarac, Florida.  At all relevant times, Ms. Ilisie has been the personal executive assistant to Takis Kyriakides.

## JURISDICTION AND VENUE

14.     The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1332, as complete diversity exists among all parties to the litigation, and the amount in controversy exceeds $75,000.00.

15.     The Court has general personal jurisdiction over all Defendants, because they all reside or conduct significant business within the geographic jurisdiction of the Court.

16.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

17.     NetTALK is a telecommunications company that provides commercial and residential telecommunication services, including services utilizing voice over Internet protocol technology.  NetTALK manufactures and sells various devices, including the DUO, DUO II, and DUOWIFI, which allow a customer to connect an analog telephone to their Internet connection to make and receive telephone calls.

18. NetTALK was formed in 2008, and its stock is publicly traded on the over the counter markets.  Because NetTALK is publicly traded, it is required to regularly file forms, registrations, and statements with the United States Securities and Exchange Commission ("SEC").

19. NetTALK's corporate headquarters are located at 1080 NW 163rd Drive, North Miami, Florida, 33169.

20. NetTALK owns the building in which its headquarters are located.  The legal description of that real property is Lot 12, Block 3 of the Sunshine State Industrial Park, Section One according to the Plat thereof, recorded in Plat Book 76, Page 75 of the Public Record of Miami-Dade County, Florida, parcel identification number 3421140070300 (the "Property").

**Telestrata Invests in NetTALK**

21. On February 21, 2014, NetTALK and Telestrata entered into a letter term sheet (the "Term Sheet") to restructure $500,000 of existing debt, to lend the Company an additional $4.07 million pursuant to the terms of a secured promissory note, to grant Telestrata ownership of 48.88% of the Company, and to be issued a warrant for an additional grant of stock equal to an additional 20% ownership in the Company following exercise of the warrant.  The Term Sheet itself was fully binding and enforceable.

22. NetTALK and Telestrata also entered into a letter agreement on February 21, 2014 (the "Side Agreement"), by which they agreed that Samer Bishay, a member of Telestrata, would become the President of NetTALK.  As part of this appointment, they agreed that the CEO of the Company (Takis Kyriakides) would retain that title, but would only be vested with the following limited authority:

    a. To raise third-party financing on behalf of the Company, but not execute documents on behalf of the Company;

    b. To consult in the sourcing and negotiation of strategic initiatives on behalf of the Company; and

    c. To sign reports filed with the SEC as required by SEC rules and regulations.

23. Under the terms of the Side Agreement, "The President of the Company [Mr. Bishay] shall be vested with all authority typically vested in a President, as well as all authority typically vested in a CEO other than the Reserved Duties, including, but not limited to, the ability to make employment decisions, Company strategy decisions, financial decisions and all other business decisions on behalf of the Company."

24. Further, the Side Agreement expressly stated that "[t]he President, **and not the CEO**, will be able to bind the Company to contractual and banking or financing arrangements" (emphasis added).

25. The Board of Directors unanimously approved the issuance of shares and the warrant to Telestrata pursuant to the Term Sheet, and on March 11, 2014, this transaction closed. Pursuant to the Restricted Stock Purchase Agreement, the Board of Directors of the Company increased to seven, with three of the Board members being appointed by Telestrata, three Board members being appointed by Takis Kyriakides and Kyriakides Investments, and then the Board members selecting a seventh individual.  The Company signed the Restricted Stock Purchase Agreement, as well as a Secured Promissory Note in the amount of $4,071,939.84 (the "Telestrata Note").

26. The capitalization table provided by Takis Kyriakides and the Company just prior to the closing indicated there were 52,048,221 outstanding shares of the Company at that time.

Specifically, as to the named Defendants in this action, the capitalization table identified the following number of shares as being owned by them:

- Kyriakides Investments, Ltd.        18,985,539
- Kenneth Hosfeld & Ana C. Imai      2,238,000
- Nick Kyriakides                    2,033,000
- Garry Paxinos                      183,000
- Angela Ilisie                      82,000
- Takis Kyriakides                   not listed as owning any shares
- Steven Healy                       not listed as owning any shares

27. Mathematically, based upon a total amount of outstanding shares of 52,048,221, under the terms of the Term Sheet the Company was supposed to issue 49,767,546 shares of common stock to Telestrata, to effectuate the Term Sheet and the intent of the deal so that, after close of the deal, Telestrata would own 48.88% of the Company.

28. However, the Company only issued Telestrata 25,441,170 shares, contrary to the negotiated percentage agreed to by the parties.  This was the amount of shares equal to 48.88% *pre-closing*, not 48.88% ownership *after issuance* as was agreed.

29. Further, in the capitalization table, the Company had a line item stating that there were 10,724,000 outstanding shares reserved for a "2013 Stock Option Plan."  However, such a plan did not and does not actually exist.  The Company and its Board have never adopted such a 2013 Stock Option Plan, the Company has never disclosed any approved plan document or contract, and there are no filings with the SEC indicating that the Company had ever adopted such a plan.

30. The Company issued a Warrant to Telestrata entitling it to obtain 20% of the outstanding shares of the Company upon exercise (the "Telestrata Warrant"), which could be exercised any time before March 11, 2015 for a $0 strike price.  Pursuant to the Restricted Stock Purchase Agreement, the Company also issued a warrant to certain

officers of the Company allowing them to likewise obtain 20% of the outstanding shares of the Company upon exercise for a $0 strike price any time before March 11, 2015 (specifically, Kyriakides Investments would obtain 10%, Mr. Hosfeld would obtain 3.25%, Nick Kyriakides would obtain 3.25%, Mr. Paxinos would obtain 3.25%, and Mr. Healy would obtain 0.25%)(the "Management Warrant").

31. The Board of Directors never conducted a formal meeting after March 11, 2014, and never chose the seventh director as provided in the Restricted Stock Purchase Agreement.

**Just prior to the Telestrata investment and loan, the Executives take various actions to protect themselves individually, to the significant detriment of the Company.**

32. Less than two months prior to the Telestrata investment, however, each of the then-executives of the Company (Takis Kyriakides, Nick Kyriakides, Garry Paxinos, and Kenneth Hosfeld) prepared new employment agreements for themselves with the Company.

33. In these agreements, they each significantly increased their salaries, and provided that they would remain employed by the Company through 2019.

34. Although the agreements provided that the Company could terminate them on certain notice prior to 2019, these executives ensured that they would continue to receive all compensation due to them under these agreements, as well as bonuses based upon performance of the Company, through 2019. This included immediate $500,000 cash payments to them if they were terminated within the first year, as well as guaranteed payments from the Company's profits for a minimum four-year timeframe post-termination.

35. These employment agreements did provide that the Company could terminate the

executives for "Good Cause" in order to be released from the obligations for continuing compensation and bonuses.   However, in order to ensure their own employment, the executives inserted draconian and significantly limited circumstances that would constitute "Good Cause," including purporting to require a "unanimous" vote of the Board of Directors and other atypical requirements.

36.     These agreements were prepared and executed after discussions had already begun concerning a potential investment by Telestrata, but were not disclosed to Telestrata until after their execution and just prior to close of the Telestrata investment.

37.     Upon information and belief, they prepared and executed these Agreements to keep themselves in control as officers of the Company even if they were able to find investment (including from Telestrata) that might displace them as the group of majority shareholders.

38.     Upon information and belief, these contracts were not disclosed to or voted upon by the shareholder membership.

39.     On February 2, 2014, Steven Healy (who had just recently joined the Company) executed a substantially similar contract as well, which was not disclosed and not voted upon by the Board.

40.     Upon information and belief, a mere four days before the closing of the transaction with Telestrata, on March 7, 2014 the Company purportedly issued 10,929,000 shares of common stock to management and employees under a purported 2012 Stock Option Plan. The Company and its officers (including Takis Kyriakides, Nick Kyriakides, Mr. Hosfeld, Mr. Healy, and Mr. Paxinos) never disclosed the existence of a 2012 Stock Option Plan to Telestrata in the disclosures provided to Telestrata in connection with the

transaction, and did not disclose to Telestrata the issuance of these shares.  At the time of their purported issuance on March 7, 2014, such an amount of shares would have equaled over 20% ownership in the Company.  Upon further information and belief, the Board of Directors did not authorize this issuance.

**Takis Kyriakides and Mr. Healy cause NetTALK to sell unauthorized securities, and enter into unauthorized financial and debt transactions**

41.     Through the summer and fall of 2014, Takis Kyriakides (acting as CEO) and Mr. Healy (acting as CFO) entered into various transactions without first consulting the Board, obtaining the approval of the Board, or involving or obtaining approval of the President of the Company, Mr. Bishay, as required by the Side Agreement.

42.     Takis Kyriakides signed agreements on behalf of the Company to enter into several business and banking transactions without authority, and without notice or approval by the Board.

43.     For example, on September 17, 2014, the Company filed a Form D notice, stating that the Company on August 21, 2014 had accepted a minimum investment of $50,000 of debt securities and had issued an option, warrant, or other right to acquire another security, and that there remained $450,000 remaining to be sold in those securities.  CFO Steven Healy signed this Form D notice.

44.     On September 30, 2014, the Company filed a current report on Form 8-K, further explaining that, on August 21, 2014, the Company had issued a Convertible Promissory Note to accredited investor JMJ Financial in the aggregate principal amount of $500,000.00 with a maturity date of August 21, 2016 (the "JMJ Note").  According to the terms of the JMJ Note, at the option of JMJ or the holder, it could be converted into

shares of the Company's common stock.  Takis Kyriakides, as CEO of the Company, purported to sign both the Form 8-Kand the JMJ Note.

45.     Also on September 30, 2014, the Company filed a second current report on Form 8-K, explaining that it had entered, on September 24, 2014, into a Securities Purchase Agreement with KBM Worldwide (the "KBM Contract"), pursuant to which the Company issued an 8% convertible promissory note (the "KBM Note") in the principal amount of $83,500.00 with a maturity date of September 11, 2015.  According to the terms of the KBM Note, at the option of KBM or the holder, the KBM Note could be converted into shares of the Company's common stock.  Takis Kyriakides, as CEO of the Company, purported to sign the Form 8-K, the KBM Note and the KBM Contract.  The Company filed a Form D Notice concerning this transaction on October 1, 2014, which was signed by Mr. Healy.

46.     Neither the JMJ Note, nor the KBM Note and KBM Contract, were presented to the Board of Directors of the Company or approved by it, and the potential shares to be acquired through these two transactions were never validly reserved or considered by the Board.

47.     No prior notice was given to the Board or to President Samer Bishay – the only authorized officer of the Company with the power to enter into such transactions – by Takis Kyriakides, Mr. Healy, or the Company.

48.     Upon further information and belief, none of the Defendants disclosed to either JMJ or KBM that only Samer Bishay was authorized to execute the respective transactions on behalf of the Company.

49.     Upon  further  information  and  belief,  the  Defendants  conspired  to  create  false

documentation suggesting that the JMJ and KBM transactions had been authorized by the Company or that Takis Kyriakides' signature was valid to bind the Company, when in fact the Board was completely unaware of the transactions or the purported sale of securities as was the President, Samer Bishay.

50. Upon further information and belief, the Company's Executive Vice President Kenneth Hosfeld and its Chief Operating Officer Nick Kyriakides were aware of the transactions, were aware that the Board had not met or approved the transactions, and were aware that Takis Kyriakides and Steven Healy had not disclosed the transactions to the Board.

51. Indeed, as a Director of the Company, Mr. Hosfeld had an independent duty to notify the other Board members of the transactions upon learning of them, and knowing that they had not been validly approved or considered by the Board.

52. During this same time, notwithstanding the Side Agreement and the significant purchase of stock by Telestrata, the executives of the Company repeatedly refused to disclose to President Samer Bishay the current status of the Company's financial condition, or to involve him in strategic or day-to-day operations discussions.

53. By way of example, Mr. Bishay had to repeatedly request that Defendant Ilisie, the personal executive assistant to Takis Kyriakides, provide him with updated documents, contracts, and financial information.  Upon information and belief, Takis Kyriakides instructed Ms. Ilisie and others not to provide material information to Mr. Bishay or anyone else affiliated with Telestrata.

54. For instance, on or about July 7, 2014, Takis Kyriakides through his wholly-owned company Phoenix Vitae Holdings, LLC entered into an insider transaction to acquire a $3,000,000 secured promissory note from Vicis Capital Master Fund, without first

obtaining approval of the Board or disclosing the transaction to the Board or shareholders.

55.     Vicis Capital Master Fund is an investment fund controlled by Defendant Shadron Stastney.

56.     Upon information and belief, Takis Kyriakides and Mr. Healy had conspired for Takis Kyriakides to obtain the outstanding debt owed to third-party Vicis Capital, and then to negotiate multiple cash investments and loans into the Company for the purported purpose of indirectly compensating Takis Kyriakides to the detriment of the Company and its shareholders by funneling these loans to repay Phoenix Vitae for the loan it purchased.

57.     This transaction was never directly disclosed to or approved by the Board, President Samer Bishay, or the shareholders of the Company, and was only included in a footnote in the Company's late 10-Q SEC filing that was filed on August 18, 2014.

58.     In that same filing, the Company affirmed (and Takis Kyriakides and Mr. Healy both affirmed under penalty of perjury) that the Company had 77,694,391 shares of Common Stock outstanding as of August 12, 2014.

**Defendants conspire to prevent Telestrata from securing its loan to the Company through recording of a mortgage lien on the Property.**

59.     In the Telestrata Note, the Company authorized and agreed to a security interest in the Property in Miami, Florida, as partial security for Telestrata's loan to the Company. Additionally, pursuant to the Telestrata Note, the Company was to provide all necessary assistance to record this security interest in the property records (the "Telestrata Mortgage").

60.     Throughout the summer and fall of 2014, representatives for Telestrata discussed with individuals for the Company (including but not limited to Takis Kyriakides, Mr. Healy, Mr. Hosfeld, and Mr. Stastney) concerning the documents required to properly and legally secure Telestrata's security interest in the Company's Property.

61.     At every turn, Takis Kyriakides, Mr. Healy, Mr. Hosfeld, and Mr. Stastney repeatedly suggested immaterial and unnecessary changes to the proposed documentation, and refused to sign any binding documents.

62.     Even as late as early October 2014, Mr. Healy was stating that he could not sign any mortgage documentation because he was unsure of the financial condition of the Company, notwithstanding his position as its Chief Financial Officer.  These statements were an attempt to delay and prevent imposition of a valid mortgage.

63.     On or about October 21, 2014, Telestrata learned from a third party that the Company, by and through Takis Kyriakides and Mr. Healy, had been negotiating a refinancing of the Company's debt and were seeking to secure a new loan to the Company with a mortgage on the Property.  Upon information and belief, Mr. Hosfeld and Mr. Stastney were aware of this potential new loan, and were also involved in its negotiation.  If this loan had remained undiscovered and consummated, it would have been recorded before any mortgage in favor of Telestrata.

64.     None of the Defendants ever notified Telestrata, the President, or the Board of any such negotiations, and never received any approval from the President, the Board, or the shareholders for the loan.

**The Disinterested Members of the Board Suspend Takis Kyriakides and Mr. Healy, but are Ignored by Defendants and Locked Out of the Company.**

65.     On October 14, 2014, after Telestrata had learned about the unauthorized SEC filings by the Company, and after the Company refused to sign or record the Telestrata Mortgage (but before it learned about the refinance scheme), Telestrata sent notice to the Company that it elected to exercise its Telestrata Warrant, and obtain an additional 20% ownership interest in the Company.  Telestrata sent this notice on October 14, 2014 via Federal Express to the Company.  On October 15, 2014, Mr. Healy responded in writing to Telestrata's counsel, stating that the exercise of the Telestrata Warrant was effective as of October 15, 2014.

66.     On October 16, 2014, three Board members, comprising a disinterested majority of the Board of Directors, drafted and signed two written notices addressed to Takis Kyriakides and Steven Healy.  These notices identified the unauthorized transactions, stated that the transactions and debt contracts were unknown to the Board and had not been approved by the Board.  These letters suspended Takis Kyriakides and Mr. Healy immediately from their positions as officers of the Company pending a Board meeting on October 29, 2014 to consider their termination for Good Cause.  The letters also instructed Takis Kyriakides and Mr. Healy to turn over all documents, electronic data, and company devices to Director Maged Bishara immediately.  As well, the notices also informed Takis Kyriakides and Mr. Healy that they could appear at the Board meeting, with counsel if they so chose, to explain their actions and why they should not be terminated for cause.

67.     These notices were hand-delivered to Takis Kyriakides and Mr. Healy the morning of

October 16, 2014 at the Company's corporate offices by a process server.

68.    These Directors also drafted and signed written notices to Mr. Hosfeld, Mr. Paxinos, and Nick Kyriakides on October 16, 2014, notifying them of the immediate suspensions of Takis Kyriakides and Mr. Healy, and instructing them to ignore and report any further instructions or requests they might receive from Takis Kyriakides and Mr. Healy.  These notices were also hand-delivered to Mr. Hosfeld, Mr. Paxinos, and Nick Kyriakides that morning by a process server.

69.    At approximately 11:00am on October 16, 2014, Maged Bishara, a member of the Company Board of Directors and signatory to the letters, came to the Company offices accompanied by counsel and another witness to escort Takis Kyriakides and Mr. Healy from the premises and to collect their documents, data, and electronic devices, pursuant to the suspension letters delivered earlier that morning.

70.    Takis Kyriakides and Mr. Healy, along with Mr. Hosfeld, Nick Kyriakides, Mr. Paxinos, and Ms. Ilisie, all met Mr. Bishara at the door in the lobby of the building, and refused to allow him access to the building.  After confirming that they had each received the letters personally delivered that morning, they stated that Mr. Bishara and the other two Directors who signed the letters (Samer Bishay and Nadir AlJazrawi) had been removed by a purported shareholder vote that same morning, that the letters and their demands were invalid, and that they and Telestrata had no rights to take any action against them.

71.    Takis Kyriakides refused to identify what time that purported shareholder vote was taken, what shareholders voted, whether any notice was provided of the vote, what the total number of voting shares were, or where the vote occurred.

72.    Takis Kyriakides then asked Mr. Bishara, counsel, and the witness to leave the premises

immediately, which they did.

73.    The next day, on October 17, 2014, Takis Kyriakides signed and caused to be filed with the SEC a current report on Form 8-K and a Form 14C Preliminary Information Statement, purporting to state that Samer Bishay, Maged Bishara, and Nadir AlJazrawi had been removed by a shareholder written consent signed by shareholders owning 52.27% of the company.

74.    In this disclosure, Takis Kyriakides represented that suddenly there are 121,398,391 outstanding shares of the Company, and that approval for the ouster of these three Directors was obtained by shareholders holding 63,456,557 shares.

75.    In the purported shareholder written consent, the amount of shares owned by the Defendants drastically differed from the amount of shares disclosed in the capitalization table provided by Takis Kyriakides, Mr. Healy, Mr. Hosfeld, and the Company just prior to the March 2014 transaction.  Specifically, the changes were as follows:

| NAME | 2/28/2014 SHARES (as listed in cap table) | 10/16/2014 SHARES (as listed in written consent) | UNAUTHORIZED DIFFERENCE* |
|---|---|---|---|
| Takis Kyriakides | None | 12,140,000 warrants | 12,140,000 warrants** |
| Steven Healy | None | 500,000 shares plus 303,500 warrants | 500,000 shares |
| Kenneth Hosfeld | 2,238,000 shares | 4,238,000 shares plus 3,945,500 warrants | 2,000,000 shares |
| Garry Paxinos | 183,000 shares | 2,183,000 shares plus 3,945,500 warrants | 2,000,000 shares |
| Nick Kyriakides | 2,033,000 shares | 4,238,000 shares plus 3,945,500 warrants | 2,205,000 shares |
| Kyriakides Investments Ltd. | 18,985,539 shares | 22,243,057 shares | 3,257,518 shares |
| Angela Ilisie | 82,000 shares | 107,000 shares | 25,000 shares |

| TOTAL | | | 9,987,518 shares |
|-------|--|--|------------------|

*Telestrata disputes all of the calculations pertaining to the number of warrants issued to these individuals, because they are based on an incorrect calculation of the amount of outstanding shares prior to execution of the warrant.*

**Under the Management Warrant, Takis Kyriakides was not allocated <u>any</u> warrants.*

76.     However, neither the Company nor any of the other individual defendants had previously filed any information statements with the SEC indicating they had obtained additional shares or ownership interest, and they were not issued any additional shares by the Board of Directors, between March 11, 2014 and October 16, 2014.

77.     Each of these individuals is required by Section 16 of the Securities Exchange Act of 1934 (as amended), whenever a director or officer of the company acquires or sells any ownership interest.  Their failure to file such disclosures is proof that they never obtained any additional shares which they purported to vote on October 16, 2014.

**Telestrata and the Locked Out Board Members Further Learn of Defendants' Fraudulent Actions, and Seek to Protect the Company.**

78.     After sending suspension letters to Takis Kyriakides and Mr. Healy and being locked out, on or about October 21, 2014, Telestrata learned from a third party that Defendants were actively attempting to refinance certain unknown debt of the Company, and to impose a new mortgage lien on the Company's headquarters.  Such a mortgage would be in violation of the Company's obligations to record a security interest in favor of Telestrata, or to make sure that Telestrata's security interest has priority over other interests.

79.     In order to protect its security interest in the Property, Telestrata gave actual notice to the title company serving as escrow agent in the Company's undisclosed refinance transaction.  Pursuant to the authority granted to it in the Telestrata Note, Telestrata also executed and recorded a mortgage on October 24, 2014 against the Property to secure its

debt.

80.    Further, on October 22, 2014, as permitted by the Company's governing documents, President Samer Bishay issued and delivered to each Board member a formal notice of the Special Board Meeting to occur on October 29, 2014, to consider the termination for cause of Takis Kyriakides and Mr. Healy.

81.    On October 29, 2014, the Special Board meeting occurred at 2825 NE 191st Street, Aventura, Florida, 33180 at approximately 8:30am.  Mr. Bishay, Mr. Bishara, and Mr. AlJazrawi were present in person.  Neither Takis Kyriakides nor Mr. Healy appeared for the meeting.

82.    Roll was taken.  By virtue of the fact that Takis Kyriakides was precluded from voting on the resolutions due to his conflicted interest in the vote on the consideration of his termination for cause and the termination for cause of Mr. Healy, Mr. Kyriakides was not counted for quorum purposes.  A quorum of the Board was deemed to be present.

83.    The Board then considered the evidence of Takis Kyriakides's and Mr. Healy's actions in entering into various contracts on behalf of the Company in violation of the direction of the Board and the authority granted to the President of the Company, and in issuing convertible securities to new investors without Board notice or approval, in contravention of federal and state securities laws.

84.    By unanimous vote, the Board then adopted a resolution terminating Takis Kyriakides and Mr. Healy "for Good Cause" under the terms of their employment agreements with the Company, effective immediately.

85.    Following adjournment of the meeting, Mr. Bishay, Mr. Bishara, and Mr. AlJazrawi (accompanied by counsel) went to the NetTALK corporate offices to deliver the signed

resolution of the Board.  They also delivered letters to Takis Kyriakides and Mr. Healy informing them of their immediate termination, and instructing them to immediately turn over all items and property belonging to the Company to President Samer Bishay. Likewise, they delivered letters to Mr. Hosfeld, Mr. Paxinos, and Nick Kyriakides, again instructing them that Takis Kyriakides and Mr. Healy had been terminated for Good Cause, had no authority to act on behalf of the Company, and instructing them to follow the direction of the Company President.

86.   They were met at the door by Defendant Ilisie.  Ms. Ilisie stated that they were not allowed to access the building, and that the other Defendants were "in a meeting" and did not want to meet with Mr. Bishay, Mr. Bishara, or Mr. AlJazrawi.  She then asked them to leave the premises, as she had been instructed to do by Takis Kyriakides.

87.   Despite repeated demands, the Defendants have refused to identify the existing shareholders of the Company or provide a current capitalization table to Telestrata.

88.   As further alleged above, Telestrata demanded that the Board take certain action against Takis Kyriakides and Mr. Healy for their actions, and attempted to cause action by the Company in good faith.  The Defendants, by and through their actions, rejected such requests, and have actively impeded and prevented the Company from taking any action.

89.   Any further demand for action made to the Company or the Defendants has been and would be futile.  Defendants refuse to recognize the rights of Telestrata as the majority shareholder, refuse to recognize or comply with any action by Mr. Bishay as President of the Company, and refuse to recognize or comply with any action by Mr. Bishay, Mr. Bishara, and Mr. AlJazrawi as Directors of the Company.

### FIRST CLAIM FOR RELIEF

(Preliminary and Permanent Injunction – Derivative – Against Company, Takis Kyriakides, and

Steven Healy)

90.   Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

91.   As further described above, Defendants have engaged in a campaign to prevent proper and legally required Board oversight of the operations of the Company and the actions of its officers, including Takis Kyriakides and Mr. Healy.

92.   Defendants have caused the Company to enter into illegal and unauthorized transactions, have filed materially false statements with the SEC on behalf of the Company, have sought to cause the Company to enter into further securities and debt transactions to the prejudice of the shareholders and creditors of the Company, without the knowledge or approval of the Board.

93.   Defendants have failed and refused to recognize the authority of the Board to govern and manage the affairs of the Company.

94.   Unless enjoined, Defendants will continue to cause the Company to enter into unauthorized and illegal transactions, and to sell unauthorized securities to the public, investors, and potential creditors of the Company.

95.   The Company will be irreparably harmed by the continuing actions of Takis Kyriakides and Mr. Healy unless they are immediately enjoined and prevented from taking further action on behalf of the Company, and disconnected from any position of authority within the Company.

96.   For these immediate and irreparable harms, the Company would have no adequate remedy at law.  The Company's damages, and those of its shareholders, are likely to far exceed the Company's ability to pay such damages.  The Company also faces irreparable

harm with no adequate remedy at law because it will lose clients, vendors, creditors, lenders, investors, and other counterparties, making proof difficult in some circumstances.

97.    Plaintiff has a substantial likelihood of success on the merits of its case.

98.    Given that immediate and irreparable injury, loss, and damage has occurred and continues to occur to the Company, and will continue to result before trial can be had, Plaintiff is entitled to injunctive relief in the form set forth herein.

99.    Plaintiff further requests that the Court set its request for permanent injunctive relief for a full trial, and after trial, issue a permanent injunction against Defendants.

100.    For the reasons set forth above, Plaintiff requests that the Court issue a temporary injunction and permanent injunction restraining and enjoining Defendants Takis Kyriakides and Steven Healy, including their respective present or affiliated entities, and their respective officers, directors, agents, partners, employees, contractors, attorneys, representatives, successors, and assigns, and all other persons in active concert or participation with them, as follows:

a.    Requiring Takis Kyriakides and Steven Healy to immediately turn over to the Company all documents, data, property, information, money, or other items belonging to the Company that is in their possession to the Company, including but not limited to keycards, computers, smartphones, tablets, data, flash drives, hard drives, documents, passwords, and login information;

b.    Prohibiting Takis Kyriakides and Steven Healy from accessing the Company's computer systems, either directly or through VPN access;

c.    Prohibiting Takis Kyriakides, Steven Healy, or the Company from representing to any person or the public that either of these two individuals are further employed by the Company, or that they have any authority to act on behalf of the Company in any manner;

d.    Suspending Takis Kyriakides from his position as Chairman of the Board of Directors pending resolution of this dispute or further action by the shareholders as recognized and approved by this Court; and

e.  Preventing the Company, any of its employees, contractors, or agents, or any of the other Defendants from disclosing any further information to Takis Kyriakides or Steven Healy concerning the operations, strategy, status, or any other non-public information concerning the Company.

101.  Pursuant to the Court's inherent equitable powers, Telestrata further requests that the Court immediately appoint a Custodian *pendente lite* for the Company, to manage and operate the Company as its chief executive pending resolution of this dispute.

102.  The injunctive relief prayed for herein will do no more than preserve the status quo pending resolution of this shareholder, Director, and officer dispute, and protect the status of all shareholders and parties in the interests of justice.

## SECOND CLAIM FOR RELIEF
(Breach of Fiduciary Duty – Derivative – Against Takis Kyriakides, Steven Healy, Kenneth Hosfeld, Nick Kyriakides, and Garry Paxinos)

103.  Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

104.  Takis Kyriakides and Kenneth Hosfeld served as Directors of the Company.

105.  Takis Kyriakides, Steven Healy, Kenneth Hosfeld, Nick Kyriakides, and Garry Paxinos served as officers of the Company.

106.  In these capacities, each owed a fiduciary duty to the Company, as well as to its shareholders.

107.  By and through their respective actions and inactions, each has breached their fiduciary duties, and caused harm to the Company and its shareholders, in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

(Declaratory Judgment – Derivative – Against Company, Takis Kyriakides, Kenneth Hosfeld,

Nick Kyriakides, Steven Healy, and Garry Paxinos)

108.   Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

109.   In preparing and causing the Company to enter into employment agreements with Takis
Kyriakides, Nick Kyriakides, Steven Healy, Kenneth Hosfeld, and Garry Paxinos, these
individuals caused the Company to enter into contractual arrangements that were not in
the best interest of the Company or its shareholders.

110.   These individuals were engaged in self-dealing, and took no action to permit or cause any
independent review of their actions to be made by the Board or the Company.

111.   The provisions of the employment agreements for each of these individuals are not in the
best interest of the Company, and were not at the time they were entered into.

112.   These agreements were not bargained for in good faith or at arms' length, but were
prepared by insiders and executed without proper oversight or approval by the Company
or its shareholders.

113.   If the contracts are entitled to remain in force and applicable, they will cause significant
hardship and manifest injustice to the Company and its shareholders.

114.   At the time that they prepared and executed these agreements, each of these individuals
knew of the injustice and hardship being caused to the Company.  The Defendants knew
that these agreements were not in the best interest of the Company when prepared and
executed.

115.   The Court should enter a declaratory judgment declaring that the contracts are void and
unenforceable.

116.   In the alternative, the Court should enter a declaratory judgment equitably reforming the

contracts.

## FOURTH CLAIM FOR RELIEF
(Declaratory Judgment – Direct – Against All Defendants)

117.  Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

118.  As previously alleged, the number of shareholders of the Company and the amount of shares owned by each shareholder is in dispute, due to the fraudulent and self-dealing actions of Defendants.

119.  Specifically, the amount of shares claimed to be owned by Takis Kyriakides, Nick Kyriakides, Kenneth Hosfeld, Garry Paxinos, Angela Ilisie, and Steven Healy does not match the amounts listed on the books and records of the Company, or the amounts previously disclosed by the Company.

120.  Telestrata requests the Court declare the proper amount of shares owned by these individuals, if any.

## FIFTH CLAIM FOR RELIEF
(Accounting – Direct – Against Company)

121.  Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

122.  Telestrata is a shareholder and creditor of the Company.

123.  Under Florida law, Telestrata has a right to inspect the books and records of the Company.

124.  Defendants are wrongfully preventing Telestrata from accessing the Company office, and wrongfully preventing Telestrata from verifying the Company's operations by refusing to properly maintain the books and records of the Company, provide notice of Company actions, entering into *ultra vires* transactions without proper notice or Board approval, and in violation of Florida law and the governing corporate documents.

125.   Defendants further refuse to operate the Company according to the policies adopted by the Directors of the Company.

126.   Telestrata and the Company are entitled to an independent accounting of the Company's operations from January 1, 2013 to present.

## SIXTH CLAIM FOR RELIEF
### (Breach of Contract – Direct – against Company only)

127.   Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

128.   The Company made and issued that certain Telestrata Note to Telestrata, in which it agreed to ensure that the Note was properly secured by a mortgage on the Property.

129.   The Company failed and refused to execute or record a mortgage on the Property.

130.   Telestrata has incurred damages in having to effectuate recordation of a mortgage to protect itself, and to notify and prevent further damages through actual notice to potential creditors.

## SEVENTH CLAIM FOR RELIEF
### (Imposition of an Equitable Lien – Direct – against Company only)

131.   Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

132.   The Company made and issued that certain Telestrata Note to Telestrata, in which it agreed to ensure that the Note was properly secured by a mortgage on the Property.

133.   The Company failed and refused to execute or record a mortgage on the Property.

134.   In the interest of equity and to effectuate the intent and expectation of the parties, the Court should impose an equitable lien on the Property, and order that this lien is junior in priority only to the lien in favor of 1080 NW 163 Drive LLC, a Florida limited liability company, dated November 29, 2012, and the lien in favor of Samer Bishay dated September 17, 2013.

## EIGHTH CLAIM FOR RELIEF
(Fraud in the Inducement – Direct – Against the Company, Takis Kyriakides, Kenneth Hosfeld,

Steven Healy, and Shadron Stastney – in the Alternative)

135.    Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

136.    By and through their representations above, made to Telestrata prior to execution of the February 21, 2014 Term Sheet, Defendants Company, Takis Kyriakides, Kenneth Hosfeld, Steven Healy, and Shadron Stastney made statements to Telestrata concerning the capitalization of the Company, and the rights to be accorded to the Company upon consummation of an investment event.

137.    The statements by these Defendants were false.

138.    At the time they made the statements, these Defendants knew the statements to be false.

139.    The Defendants made their statements for the purpose of inducing Telestrata to rely upon them and invest over $4.2 million into the Company.

140.    Telestrata reasonably relied on the statements, to its detriment.

141.    Telestrata is entitled to be awarded damages and the benefit to which it bargained, namely a 68.88% ownership interest in the Company.  Alternatively, Telestrata is entitled to be awarded damages and rescission of the investment agreements, and return of its investment money.

142.    Through their actions, these named Defendants should be held jointly and severally liable for any judgment in Telestrata's favor.

## NINTH CLAIM FOR RELIEF
(Conspiracy –Against all Defendants)

143.    Telestrata incorporates by reference paragraphs 1 through 89 as if fully restated herein.

144.    As further alleged above, each of the Defendants have conspired amongst themselves to

accomplish improper or illegal goals.

145.   As further alleged above, each of the Defendants have conspired amongst themselves to accomplish goals through improper or illegal means.

146.   By and through their actions, they have caused harm to the Company and to Telestrata.

147.   Each of the Defendants should be found jointly and severally liable for the damages caused to the Company and to Telestrata.

WHEREFORE Plaintiff Telestrata, LLC respectfully requests that judgment be entered in its favor and against Defendants, jointly and severally, and that it be awarded:

a.     Injunctive relief as further requested herein;

b.     Appointment of a Custodian *pendente lite* pending resolution of this dispute;

c.     An order determining the correct amount of shares outstanding for the Company, and the correct amount of shares owned by Telestrata and the Defendants;

d.     An order declaring that Defendants' employment agreements are void and unenforceable;

e.     Compensatory damages in an amount to be determined at trial;

f.     Award of damages to the Company based upon Defendants' breach of his fiduciary duties to the Company;

g.     All consequential, punitive, or other damages to the fullest extent allowed by law, in an amount to be determined at trial;

h.     An order compelling a proper independent accounting;

i.     Pre-judgment interest and post-judgment interest at the maximum rate permitted by law or contract;

j.     Its attorneys' fees and costs to the fullest extent by law; and

k.      Such other and further relief as this Court deems just and proper.


Respectfully submitted this 5th day of October, 2015.

*/s/ Livingston Keithley*
KELLY & WALKER LLC
R. Livingston Keithley, Esq., *pro hac vice*
1512 Larimer Street, Suite 200
Denver, Colorado  80202
lkeithley@kellywalkerlaw.com

and

/S/ MATTHEW C. MARTIN
GAEBE, MULLEN, ANTONELLI & DIMATTEO
Matthew C. Martin, Esq.
Commerce Pointe
1818 South Australian Ave., Suite 102
West Palm Beach, FL  33409
mmartin@gaebemullen.com


*Attorneys for Plaintiff Telestrata LLC*

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on the 5th day of October, 2015, I electronically served the foregoing upon the following via the CM/ECF System:


Sichenzia Ross Friedman Ference LLP
Christopher Milazzo, Esq., *pro hac vice*
61 Broadway, 32nd Floor
New York, NY  10006

*Attorneys for Defendants*

Peter F. Valori, Esq.
Amanda L. Fernandez, Esq.
Damian & Valori LLP
1000 Brickell Avenue, Suite 1020
Miami, FL  33131
pvalori@dvllp.com
afernandez@dvllp.com
*Attorneys for Defendants*


*s/Matthew C. Martin*