UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 1:14-CV-24137-JLK

**TELESTRATA, LLC, a Colorado limited liability company, individually and derivatively on behalf of the shareholders of NetTALK.com, Inc., a Florida corporation,**

      Plaintiff,

v.

**NETTALK.COM, INC., a Florida corporation,
ANASTASIOS "TAKIS" KYRIAKIDES,
STEVEN HEALY,
ANASTASIOS "NICK" KYRIAKIDES II,
KENNETH HOSFELD,
GARRY PAXINOS,
KYRIAKIDES INVESTMENTS, LTD., a Florida limited partnership,
SHADRON STASTNEY, and
ANGELA ILISIE**,

      Defendants.

---

**STIPULATED JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
PURSUANT TO *FED. R. CIV. P.* 23.1(c)**

---

COME NOW, Plaintiff, Telestrata, LLC ("Plaintiff"); and Defendants, NetTalk.com, Inc. ("NetTalk"), Anastasios "Takis" Kyriakides ("T. Kyriakides"), Steven Healy ("Healy"), Anastasios "Nick" Kyriakides II ("N. Kyriakides"), Kenneth Hosfeld ("Hosfield"), Garry Paxinos ("Paxinos"), Kyriakides Investments Ltd. ("KIL"), Shadron Stastney ("Stastney"), and Angela Ilisie ("Ilisie" and together with T. Kyriakides, Healy, N. Kyriakides, Hosfield, Paxinos, and Stastney, the "Individual Defendants"; the Individual Defendants, NetTalk and KIL are collectively referred to as "Defendants"); and Third Party Defendants, Samer Bishay ("Bishay"), Maged Bishara ("Bishara"), and Dr. Nadir AlJazrawi ("AlJazrawi" and together with Bishay and

1

Bishara, the "Third-Party Defendants"), by and through their respective undersigned counsel, and seek an Order pursuant to *Fed. R. Civ. P.* 23.1(c) approving the settlement of the claims, counterclaims, and third-party claims in this action. In support thereof, the Parties state:

This Court should approve the settlement reached between the Parties in order that this action can be dismissed in its entirety, with prejudice, with each side to pay its own fees and costs. After years of highly contentious litigation, the Parties have successfully achieved a resolution of this Litigation, and it is in their best interest as well as the best interests of this Court, NetTalk, and NetTalk's shareholders, for this action to be terminated. Thus, pursuant to *Fed. R. Civ. P.* 23.1, the parties seek for the Court to issue an order granting preliminary approval to the settlement agreement executed by the parties (the "Settlement Agreement"), approving a notice to be sent to the shareholders, expeditiously setting a fairness hearing at which the Court may hear any objections, and enter a final order approving the Settlement Agreement and dismissing the action.

## ARGUMENT

### A. Procedural and Factual History

Plaintiff is a shareholder in NetTalk.com, a publicly-traded Florida corporation. Plaintiff initiated this civil action on November 5, 2014 based upon its allegations that Defendants, NetTalk's executives and directors, have been engaged in significant acts of self-dealing and attempts to harm NetTalk for their own personal benefit. Specifically, Plaintiff alleges that the individual defendants have withheld corporate information from NetTalk's shareholders, and have purported to take actions to prevent the proper and lawful exercise of corporate oversight of them, by (i) refusing to cede managerial control of NetTalk to Bishay, pursuant to a March 2014 agreement; (ii) failing to permit three NetTalk Board seats to be occupied by Plaintiff representatives; and (iii) engaging in a series of self-serving actions. Plaintiff also asserts direct

claims for imposition and validation of its security interest in NetTalk's headquarters building, which NetTalk was supposed to grant as security for Plaintiff's $4.5 million loan to NetTalk in March 2014.  Plaintiff alleges that the Individual Defendants engaged in a conspiracy to delay and prevent the recording of that security interest in the real property records for the building, and ultimately sought to exclude Plaintiff and its representatives from any corporate action after Plaintiff learned the Individual Defendants had been negotiating for new additional debt or investment to also be secured by the building.  Plaintiff seeks various derivative and direct relief in this action, including expulsion of the CEO and CFO of NetTalk (pursuant to the vote of the non-insider directors of the Board), affirmation of its security interest in the building, and invalidation of various acts by the Defendants to grant themselves additional ownership interest in NetTalk.

Defendants deny any liability to Plaintiff, and have brought counterclaims against both Plaintiff and the Third-Party Defendants, asserting claims to (i) invalidate Plaintiff's claim to a security interest in the building; (ii) expel the Third-Party Defendants from the Board; and (iii) seek damages in tort from the Third-Party Defendants for having allegedly interfered with NetTalk's negotiations for new investment and debt through this litigation.

This Court denied Defendants' Motion to Dismiss Plaintiff's claims on April 27, 2015, and following a three-day evidentiary hearing on August 2-4, 2015, this Court imposed a preliminary injunction on August 19, 2015 against the Defendants, preventing them from, among other things, issuing, authorizing, selling or purchasing further securities of NetTalk or otherwise modifying the ownership table of NetTalk, until trial.  NetTalk appealed the injunction to the Eleventh Circuit (which appeal was stayed pending resolution of these settlement negotiations).

The parties have exchanged multiple sets of written discovery, and also conducted multiple depositions in January 2016, prior to this Court's issuing a stay of all proceedings pending determination of the injunction appeal before the Eleventh Circuit. They have also engaged in significant extended negotiations between counsel, to seek resolution of the claims in the case.

### B. The Settlement Agreement Structure

Attached to this Motion as Exhibit A is the Settlement Agreement entered into by the parties (as amended). The parties initially entered into the Settlement Agreement on June 29, 2017, and commenced a due diligence and inspection period with respect to certain real property located at 1080 NW 163rd Drive, Miami Gardens, Florida (the "Property") which is contemplated to be transferred by NetTalk to Plaintiff as a condition thereto. Under the terms of the Settlement Agreement, this inspection period had to be completed before the parties agreed that the Settlement Agreement would be fully binding, and could be presented to this Court for approval. As evidenced by the First Amendment to Settlement Agreement, dated October 10, 2017, the parties have agreed that the inspection period is complete, the agreement is fully binding, and that they should now present it to the Court for approval.

Under the terms of the Settlement Agreement, NetTalk will transfer its title ownership of the Property to Plaintiff, or its designee, and also pay to Telestrata $213,650, in exchange for (a) Plaintiff's assumption of NetTalk's obligation to pay approximately $1.4 million of mortgage debt (secured by the Property) owed to a third party first mortgagee (the "First Mortgage") ; (b) release and satisfaction of NetTalk's alleged obligation to pay to Plaintiff $4.5 million (not including accrued interest and fees), which amount is memorialized in a Promissory Note currently held by Plaintff (the "Mortgage Note"); and (c) transfer of all securities of NetTalk held by Plaintiff or its principals or their respective affiliates. Additionally, the Settlement Agreement provides for the

4

parties to exchange broad mutual releases, including the waiver and release of all claims, counterclaims, and third-party claims in this action, with prejudice.  Plaintiff is not seeking an award of attorneys' fees from NetTalk as part of the settlement.

In sum, this Agreement effectuates a complete divorce of the parties, decreases the vested and contingent liabilities of NetTalk (by eliminating the mortgage debt as well as eliminating any potential additional obligations arising from this litigation), and lifts the preliminary injunction which has the effect of restraining NetTalk from, among other things, engaging in capital raising transactions involving the sale and/or transfer of NetTalk's securities.  The Settlement Agreement was negotiated at arms-length by undersigned counsel for the parties, with each side having ample opportunity to negotiate material terms, and opportunity to evaluate terms with necessary counsel and financial advisors.  The parties (who collectively constitute at least 88%, and may constitute up to 94%,[1] of NetTalk's outstanding shares) believe that the Settlement Agreement is fair and equitable not only to the parties, but is also fair, reasonable, and equitable to NetTalk and all of its shareholders, and that its effectuation is in the best interests of NetTalk.

## C. The Settlement Agreement is Fair and Reasonable, and Should Be Approved by the Court Under the *Bennett* Test.

Ordinarily, litigants may stipulate to the dismissal of litigation without needing an order from the Court.  *Fed. R. Civ. P.* 41(a)(1).  Pursuant to *Fed. R. Civ. P.* 23.1(c), however, a derivative action may only be settled and voluntarily dismissed with the Court's approval.

---

[1]  The parties are in dispute as to the percentage of their collective ownership of NetTalk. The parties agree they collectively own at least 88% of NetTalk, but dispute whether certain securities issued by NetTalk to certain of the Defendants (which were the subject of the preliminary injunction hearing) are also outstanding, valid, and countable for purposes of this calculation.

5

"In order to approve a settlement, a district court must find that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). In evaluating whether a settlement of a derivative action is fair, the court should examine the following factors: (1) the likelihood of success; (2) the range of possible recovery; (3) the point on or below the range of recovery at which settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Sterling v. Stewart*, 158 F.3d 1199, 1204 (11th Cir. 1998)(*citing Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)(stating the standard for voluntary dismissal upon settlement of class action)).

"Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983). A district court may rely upon the judgment of experienced counsel for the parties in determining the fairness and adequacy of the settlement. *Cotton,* 559 F.2d at 1330. Indeed, absent fraud, collusion, or the like, the district court "should be hesitant to substitute its own judgment for that of counsel." *Id.* The trial court should examine the settlement in light of any objections, and provide a reasoned response to those objections. *Id.* at 1331; *Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 632 (11th Cir. 2015) (unpublished) (evaluating factors for settlement of class action litigation).

In making these determinations, the district court enjoys wide discretion, and in exercising its discretion, the court should not decide the merits of the action or attempt to substitute its own judgment for that of the parties. *Maher*, 714 F.2d at 455.

6

Under the *Bennett* Test, 737 F.2d at 986, the Court is to examine the proposed settlement under six factors to determine its reasonableness for approval under *Fed. R. Civ. P.* 23.1. Under all six factors, the Settlement Agreement should be approved by the Court.

First, although the Court issued a preliminary injunction on August 19, 2015, specifically finding that Plaintiff was likely to prevail on at least certain of its claims, the overall likelihood of success of either group of parties is still unknown and uncertain. The underlying Verified Complaint brought by Plaintiff asserts nine claims for relief, and Defendants assert seven counterclaims and third-party claims. These claims and counterclaims are highly fact-specific, including claims for breach of fiduciary duty, fraudulent inducement, interference with contract and interference with prospective business advantage, and civil conspiracy. Although the case has proceeded through significant discovery, Defendants have substituted new counsel on the case who have indicated their intent to conduct further discovery in this action should it not be dismissed. Discovery in the case has been on hold due to Defendants' appeal of the injunction order. Discovery in this matter has been and would otherwise continue to be extensive and expensive, given that the parties themselves are located in multiple jurisdictions (Colorado, Canada, Florida, and New York).

Second, there is a wide range of possible recovery between the parties. Plaintiff brings derivative claims seeking damages of at least $4.5 million, plus prejudgment and post judgment interest, attorneys' fees, and costs. As well, Plaintiff also asserts its claim for declaratory judgment against certain of the Individual Defendants who are also employees, to invalidate the employment contracts under which they were paid significant sums to the detriment of NetTalk, further increasing the amount of potential damages it would recover at trial. On the other side, Defendants assert counterclaims and seek damages of $8.8 million.

Third, the parties and their experienced undersigned counsel believe that the settlement achieved is fair and reasonable to all parties. It will resolve all claims, including the resolution of a disputed $4.5 million obligation in the form of the Mortgage Note, in exchange for the transfer to the Plaintiff of the Property subject to the First Mortgage. Aside from the transfer of the Property, the transactions contemplated by the Settlement Agreement do not diminish the value of NetTalk's assets and in fact decrease NetTalk's liabilities and increases shareholder equity. The Settlement Agreement also has the effect of releasing the injunction against NetTalk (thereby permitting NetTalk to engage in capital raising transactions), and relieves NetTalk from the obligations of real estate ownership. Additionally, the Settlement Agreement has further collateral benefits for NetTalk, in that it also resolves any dispute with Iris Technologies, Inc. d/b/a Iristel, a Canadian telecommunications company controlled by Bishay ("Iristel"), to whom it is alleged that NetTalk owes disputed fees in excess of $1.2 million. Without approval of the settlement, NetTalk will not only be forced to further litigate this civil action, but will also face certain additional litigation from Iristel to collect this amount.

Further, there has been no collusion between the parties. This settlement is the product of extended and arms' length negotiations between the parties and their counsel, over a several-month period of time. In the absence of collusion, courts assessing the merits of a settlement have long relied on the judgment of competent counsel. *See Reed v. Gen. Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983)(stating that "the value of the assessment of able counsel negotiating at arm's length cannot be gainsaid"); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd* 661 F.2d 939 (9th Cir. 1981)("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight").

Fourth, this litigation certainly can be described as complex civil litigation, which will involve numerous complicated legal and factual issues, and be expensive, and tedious to resolve through trial. Proceeding in litigation will necessarily require engagement of expert witnesses on both sides for multiple topics, and will require a multi-week trial in order to allow the factfinder to fully and fairly consider the disputed factual issues and render a verdict.

Fifth, the parties do not anticipate there will be any shareholder objection to this settlement, and assert that any objection that might be tendered should not be given significant weight by the Court. Regarding the percentage of shareholder approval of this deal, Plaintiff and Defendants agree that they collectively own and control at least 88% (and up to 94%) of the outstanding shares of NetTalk. *See* Preliminary Injunction Order, August 19, 2015, at pp. 3-4. Specifically, as found by the Court in its injunction order:

- As of the date of Plaintiff's stock purchase, Plaintiff was granted 25,441,170 shares, the Individual Defendants already owned 26,771,539, and NetTalk also had 10,724,000 shares in an employee stock option plan controlled by the Board (on which only Plaintiff's representatives and certain Defendants sit) – these amounts total 62,986,709 shares, or 81.3% of the total outstanding shares of 77,489,391 post-closing, *see* Injunction Order at pp. 3-4.

- On October 15 and 16, 2014, NetTalk issued an additional 19,424,000 of shares to Plaintiff, and then purported to issue Defendants an additional 24,280,000, after each side executed their warrants for additional shares granted as part of the original transaction, *see id.* at 4-5. These additional shares thereby modified the collective control of the parties to being 88.0% (106,690,709 shares of approximately 121,193,391 outstanding).

9

- Although their actions have been enjoined by this Court, Defendants further purport to have issued themselves an additional 114,000,000 shares for services rendered and unpaid compensation, *see id.*, which if validated at trial would mean that the parties collectively own and control 220,690,709 shares out of 235,193,391 issued and outstanding shares of NetTalk, or 93.8%.

Because at least 88% (and potentially 94%) of the outstanding issued shares of NetTalk are in favor of the settlement, this Court should give great weight to the intent and wish of those shareholders (who are also the parties in this action).

Sixth, the current stage of this case is a reasonable point for this settlement to be entered, as structured. The parties have conducted significant discovery, including multiple depositions in several cities, and have gone through at least two rounds of written discovery requests. A preliminary injunction has been entered against Defendants and has been appealed to the Eleventh Circuit. After the parties agreed to the material terms of settlement, they sought and obtained a stay of the appeal in order to complete due diligence and inspections relating to the transfer of the Property, and now move forward to effectuate the settlement and seek this Court's approval of it. Procedurally, the case is at the close of discovery, and following ruling from the Eleventh Circuit, the case would otherwise be remanded to be set for trial.

Thus, as shown above, under all of the *Bennett* factors, this settlement is fair, reasonable, and adequate in light of the claims being settled, and in the best interests of NetTalk and its shareholders, and should be approved by the Court.

### D. The Court Should Allow NetTalk to Publish Notice of this Settlement to Satisfy Rule 23.1.

Notice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders in whatever manner the Court may require. *Fed. R. Civ. P.* 23.1.

Here, as stated above, the parties own at least 88% and potentially 94% of NetTalk's outstanding shares. As such, the parties respectfully suggest that the notice requirement under Rule 23.1 to the holders of the remaining shares of NetTalk common stock (approximately 6-12%) (the "Remaining Holders") should be of relatively minor concern, when compared to more traditional derivative litigation where a few shareholders representing a small minority of stock assert derivative claims. The notice required by the Court should be commensurate with the relatively small group of shareholders not already having approved the Settlement Agreement.

Notwithstanding, when ordered by this Court to do so, NetTalk will post to its website a written notice, in substantially the form attached as Exhibit B, addressed to the Remaining Holders of the proposed settlement of this litigation (the "Notice"). *See e.g. Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314, 323 (E.D. Pa. 1993)("notice by publication may be the principal means for informing [shareholders] of their . . . rights")(concerning approval of settlement of class action litigation). Unlike class action litigation under Rule 23, derivative litigation under Rule 23.1 does not require direct notification to each shareholder, or provision of an "opt out" communication; rather, derivative litigation only requires notice in a form as approved by the Court, and an opportunity to object to the approval of the settlement. *Compare Fed. R. Civ. P.* 23(e) (settlement of class action requires "notice in a reasonable manner to all class members who would be bound" and an opportunity to seek exclusion) *with Fed. R. Civ. P.* 23.1(c) (notice to shareholders "must be given . . . in the manner that the court orders"). Notwithstanding this, in an abundance of caution,

NetTalk will also (i) dispatch the Notice to the Remaining Holders via U.S. Mail delivered to their last known street address or via electronic mail to their last known email address; and (ii) send out the Notice via press release.

Among other things, the Notice provides information about (i) how to review the settlement terms and other information about this action, (ii) the protocol for any shareholder to submit objections on the proposed settlement, and (iii) the date of the Objection hearing .

### E. Proposed Scheduling Issues.

Given that the Settlement Agreement is already approved by at least 88% of the shareholders of NetTalk, the parties suggest that the Court schedule its fairness and objection hearing at the earliest available opportunity prior to the end of the calendar year. NetTalk will process and dispatch the Notice promptly after the issuance of this Court's order giving preliminary approval to the Settlement Agreement, and the Remaining Holders will be provided at least 21 days (the standard amount of time given to litigants under the rules to respond to motions or respond to a complaint) in which to object to the Settlement Agreement.

In this manner, the parties will be able to close and complete the settlement transaction, and dismiss this three-year-old litigation, within this calendar year.

### CONCLUSION

The Parties to this case have been able to reach a full and fair resolution of all of the claims, counterclaims, and third-party claims asserted in this case, after extended arms' length negotiations. The resolution is fair to all the parties, as well as NetTalk and its shareholders. Given that the parties themselves comprise at least 88% of the shareholders of NetTalk, this Court should quickly provide preliminary approval of the settlement agreement, set deadlines for the filing of

any objections and to conduct any necessary fairness hearing, and allow the parties to go forward with the settlement that resolves and terminates this three-year-old case.

WHEREFORE, for the foregoing reasons, Plaintiff, Defendants, and the Third Party Defendants jointly request that the Court issue an order pursuant to *Fed. R. Civ. P.* 23.1 giving preliminary approval of the settlement agreement attached hereto as Exhibit A, approving the Notice attached as Exhibit B, and setting a fairness hearing within the next sixty days to hear any objections and provide final approval of the settlement, and granting such other and further relief as it deems just and proper.

Respectfully submitted this 7th day of November 2017.

*/s/ Livingston Keithley*
KELLY & WALKER LLC
R. Livingston Keithley, Esq., *pro hac vice*
1512 Larimer Street, Suite 200
Denver, Colorado  80202
lkeithley@kellywalkerlaw.com

and

GAEBE, MULLEN, ANTONELLI & DIMATTEO
Matthew C. Martin, Esq.
420 South Dixie Highway, Third Floor
Coral Gables, FL 33146
mmartin@gaebemullen.com

*Attorneys for Plaintiff Telestrata LLC, and Counterclaim Defendants Samer Bishay, Maged Bishara, and Nadir AlJazrawi*

*/s/ Robert M. Stein*
Robert Stein, Esq.
Jeffrey Tew, Esq.
Rennert, Vogel, Mandler & Rodriguez, PA
1000 S.E. Second Street, Suite 2900
Miami, FL  33131
rstein@rvmrlaw.com
jtew@rvmrlaw.com
Tel: 305-423-3437
Fax: 305-533-8519

*Attorneys for Defendants NetTalk.com, Inc., Anastasios "Takis" Kyriakides, Steven Healy, Anastasios "Nick" Kyriakides II, Kenneth Hosfeld, Garry Paxinos, Kyriakides Investments Ltd., Shadron Stastney, and Angela Ilisie*